**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **T.F.** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 1:25-CV-05594-TRJ |
| | : | |
| **WYNDHAM HOTELS & RESORTS, INC.,** | : | JURY TRIAL DEMANDED |
| **d/b/a DAYS INN BY WYNDHAM,** | | |
| **KRUSHNA HOSPITALITY LLC d/b/a DAYS** | | |
| **INN BY WYNDHAM** | | |
| | : | |
| Defendants. | : | |

**FIRST AMENDED COMPLAINT**

AND NOW, come the Plaintiff, T.F., by Andreozzi + Foote, who file this First Amended Complaint against the Defendants, **Wyndham Hotels & Resorts, Inc. d/b/a Days Inn by Wyndham (hereinafter "Defendant Wyndham"), and Krushna Hospitality LLC d/b/a Days Inn by Wyndham (hereinafter "Defendant Krushna"),** and in support thereof, state as follows:

**INTRODUCTION**

1.     This action for damages is brought by Plaintiff, survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2.     Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3.     Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud,

and coercion by a trafficker to engage in commercial sex at the subject hotel, by being psychologically and physically prohibited from escape by a trafficker, or alternatively, was a minor at the time of the trafficking.

4.     The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5.     Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

## PARTIES

6.     Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff name and address is not contained herein protect the safety, privacy and identity of sex trafficked victim(s). Nationwide similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

7.     Plaintiff is currently a resident of Georgia.

8.     Plaintiff was born in 1997.

9.     At all times relevant and material, Defendant Krushna is a Limited Liability Company registered to do business in Georgia.

10.     Defendant Krushna was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Days Inn by Wyndham, located at 2451 Old National Parkway, College Park, GA 30349, during the relevant period, and

prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

11.     During the relevant period, Defendant Krushna was operator of the subject aforesaid premises.

12.     Defendant Krushna acted as a Franchisee and not a Franchisor for the subject aforesaid premises.

13.     Defendant Krushna is a franchisee of Defendant Wyndham.

14.     At all times relevant and material, Defendant Wyndham is a Delaware corporation with a principal place of business at 22 Sylvan Way, Parsippany, NJ 07054. It maintains a registered agent, Corporate Creations Network, Inc., located at 2985 Gordy Parkway, 1st Floor, Marietta, GA 30066.

15.     Defendant Wyndham is the successor entity to Wyndham Worldwide Corporation and retains successor liability for the wrongful acts of its predecessor. Where applicable, references to Wyndham in this Complaint refer also to Wyndham Worldwide Corporation.

16.     Defendant Wyndham owned, supervised, managed, controlled, and / or operated Defendants' College Park Days Inn by Wyndham  located at 1779 N 9th St, Bartonsville, PA 18321.

   a.  Defendants' College Park Days Inn by Wyndham is a Wyndham brand property.

   b.  Wyndham employees worked throughout Defendants' College Park Days Inn by Wyndham . Wyndham employees worked jobs including front desk and housekeeping. Wyndham is the principal with control over nearly every element of operations at Defendants' College Park Days Inn by Wyndham . Wyndham is liable, directly, vicariously, and / or indirectly through an agency relationship for

acts and/or omissions of the employees at its branded hotels, including Defendants' College Park Days Inn by Wyndham where T.F. was trafficked. Wyndham has an actual and apparent agency relationship with the physical property owners of Defendants' College Park Days Inn by Wyndham to establish vicarious liability.

c. Wyndham controlled and dictated the actions and inactions of Defendants' College Park Days Inn by Wyndham through highly specific and detailed brand standards, policies, and procedures.

d. Wyndham knowingly benefited, or received something of value, from its ventures at Defendants' College Park Days Inn by Wyndham through royalty payments, licensing fees, and percentages of the gross room revenue generated by the hotel operations, including rates charged through rooms where T.F. was trafficked, as well as in maintaining a positive public image for Defendants' College Park Days Inn by Wyndham. Wyndham also benefited from gathering personal data from the Wi-Fi it provided to customers including T.F. and her traffickers.

e. Wyndham is subject to the jurisdiction of this Court because it regularly conducts business in Georgia, including through the operation of numerous hotels in Georgia, such as Defendants' College Park Days Inn by Wyndham, contracting to supply services in Georgia. Wyndham has derived substantial revenue from services rendered in Georgia, has caused injuries to T.F. in Georgia, and profited from a commercial business venture which unlawfully permitted criminals to sell T.F. for commercial sex at Defendants' College Park Days Inn by Wyndham.

f. Whenever reference is made in this Complaint to any act, deed, or conduct of Wyndham, the allegation is that Wyndham engaged in the act, deed, or conduct by

or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Wyndham.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendant conducts business within this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

19.     As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotel, owned and operated by Defendants, by her trafficker in 2015 and through and inclusive of 2017.

20.     During her captivity at the Defendants' College Park Days Inn by Wyndham, T.F. was raped, continuously abused physically and verbally, malnourished, psychologically tormented, kidnapped, and imprisoned in connection with the sex trafficking endeavor at the subject hotel.

21.     Plaintiff's trafficker booked hotel rooms at the subject hotel.

22.     Plaintiff's trafficker paid cash for the rooms.

23.     During the Plaintiff's trafficking, Plaintiff was at the hotel multiple days per week.

24.     Plaintiff was sexually abused by numerous men and women while at the subject hotel.

25.     There was heavy traffic of sex buyers in and out of the Plaintiffs room.

26.     Plaintiff would make multiple requests for additional towels during her stays.

27.     Plaintiff's rooms would have drug paraphernalia and large amount s of condom wrappers left in room after each checkout.

28.     Sex trafficking occurred at this subject hotel, upon information and belief, prior to Plaintiff's trafficking.

29.     Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

30.     As a hotel owner and hotel operator, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

31.     A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotel and motels.

32.    The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

33.    In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

---

[1] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3 /.

[2] *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and analysis/tip/2021/GLOTiP_2020_15jan_web.pdf /. See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html /.

[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry /; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf /.

34. Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

35. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

36. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

37. Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

38. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

39. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well

---

[5] *The Blue Heart Campaign,* UNITED NATIONS (2022), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime /.
[6] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone /.

as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

40.    Due to the involvement and affirmative actions of Defendants (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her trafficker on Defendants' premises in violation of the TVPRA, including, but not confined to, by:

a. Defendants repeatedly rented rooms to Plaintiff's trafficker when Defendants knew or should have known said trafficker was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA;

b. Defendants associating with Plaintiff's trafficker in an effort to force her to serve their business objective;

c. Defendants allowing commercial dealings with the aforesaid trafficker (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

d. Defendants' staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the trafficker so as to alert the aforesaid trafficker of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

e. Defendants actively advancing the sex trafficking operation of Plaintiff's trafficker by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,

f. Defendants were otherwise being actively involved and affirmatively enabling Plaintiff's trafficker and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her trafficker on Defendants' premises in violation of the TVPRA.

41.    Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

42.     Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel including as to Plaintiff herein and in violation of the TVPRA.

43.     Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

44.     Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants' premises in violation of the TVPRA.

45.     Defendants by their passive or active involvement and affirmative enabling of the subject trafficking were a proximate and competent cause and substantial factor in causing Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

46.     Because of the foregoing conduct of Defendants, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

47.     Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants.

48.     At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

49.     Plaintiff is a "victim" of sex trafficking as protected under applicable provisions

of the TVPRA.

50.     As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel hotel owned and operated by Defendants.

51.     Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

52.     Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

53.     More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated § 1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendant.

54.     In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, trafficker used various means to do so including but not limited to (a) trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; (b) trafficker instilled in Plaintiff the fear of severe bodily injury and/or fear of death if trafficker's directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the trafficker of Plaintiff to induce sex with sex buyers at the subject hotel.

55.    Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her trafficker (or at the direction of her trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

56.    Defendants rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

57.    The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

58.    Plaintiff trafficker took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

59.    In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her trafficker online) and from such Wi-Fi service Defendants, upon information and belief, received financial benefit.

60.    Defendants participated in a venture by operating the subject hotel that rented rooms to individuals that Defendants, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

61.    During the time Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker had direct interaction with employee(s) and staff of Defendants by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendants to act as lookout(s)/informant(s) for Plaintiff's trafficker, while acting in their scope of employment, so as to inform the trafficker of police activity or other similar type alerts.

62.    In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker that violated the TVPRA.

63.    Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

64.    Defendants operating the subject hotel and renting out rooms to Plaintiff's trafficker was an enterprise involving risk and potential profit.

65.    Defendants operating the subject hotel and renting out rooms to Plaintiff's trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

66.    By renting rooms to Plaintiff's trafficker Defendants, the hotel owner and operator, was associating with Plaintiff's trafficker in an effort to force Plaintiff to serve their business objective.

67.    The modus operandi of the trafficker was to renew the room(s) rental daily.

68.    A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's trafficker, in part, in that the hotel repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

69.    Plaintiff's trafficker had prior commercial dealings with the subject hotel which the trafficker and Defendants wished to reinstate for profit when Plaintiff's trafficker repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

70.    Defendants had constructive and/or actual knowledge that the undertaking or

enterprise violated the TVPRA as to the Plaintiff.

71.     Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the trafficker's rented room(s) to have sex with trafficked victim(s);
(b) trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;
(c) suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s);
 (d)  inside the hotel room(s) rented by the trafficker (or at the direction of the trafficker) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;
(e) trafficker monitoring hotel hallway, door of room(s) and walking hotel perimeter;
(f) trafficker shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;
(g) Plaintiff soliciting for sex buyers on the hotel premises at the direction of her trafficker,
(h) Plaintiff's room exhibited signs of commercial sex work,
(i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring
(j) trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff
(k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendants, (4) trafficker overtly asserting control over Plaintiff in common areas of the hotel in view and/or earshot of staff of Defendants (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room
and (l) other commonly known sex trafficking red flags which the above captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

72.     Defendants' staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

73.     When being trafficked at the subject hotel, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, trafficker as well as a frequent

procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

74.    Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

75.    Defendants were involved and affirmatively took actions as the hotel owner and operator on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff's trafficker when Defendants knew or should have known said trafficker was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA, (b) Defendants associating with Plaintiff's trafficker in an effort to force her to serve their business objective, (c) Defendants allowing commercial dealings with the aforesaid trafficker to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the trafficker so as to alert the aforesaid trafficker of police activity or similar type warning alerts, (e) Defendants knowingly facilitating and/or negligently facilitating the trafficker's activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's trafficker and facilitating their venture's success.

76.    Defendants' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including,

but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

77.    Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

78.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

79.    As a direct and proximate result of Defendants' involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotel in violation of the TVPRA.

80.    Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT II
## VIOLATION OF CHILD ABUSE VICTIMS RIGHTS ACT, 18 U.S.C. § 2255
## ("CAVRA")

81.    Any person who, while a minor, "was a victim of a violation of section . . . 1591 [among others] . . . and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255.

82.    Plaintiff was a minor at the time of the sex trafficking described herein in violation of § 1591.

83.    Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT III
## NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS

84.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

85.    At all times relevant, Defendant(s) owed a duty to protect Plaintiff from harm while in the care of Defendant(s) and/or Defendant(s)'s agents.

86.    Defendant(s) violated its duty, and was negligent, careless, grossly negligent, and/or reckless as follows:

   a.    By failing to establish adequate sex trafficking prevention policies, procedures, and practices;
   b.    By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;
   c.    By failing to retain, hire, train, and supervise agents/employees with

       regard to the prevention of sex trafficking;

d. By failing to adequately monitor and supervise the premises and/or Trafficker and Plaintiff;

e. By failing to know and react to the risks of sexual trafficking inherent in its activities;

f. By failing to require sex trafficking training;

g. By failing to recognize the signs that Trafficker was a sex trafficker or that Plaintiff were being sex trafficked;

h. By failing to report Trafficker to the appropriate authorities; and,

i. By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344, & 371.

87. As a direct and proximate cause of Defendant(s)'s actions and omissions, and breach of the duties of reasonable care, Plaintiff were injured, resulting in damages.

## JURY TRIAL DEMAND

Plaintiff hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;

b) Past and future emotional distress;

c) Consequential and/or special damages;

d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e) Disgorgement of profits obtained through unjust enrichment;

f) Restitution;

g) All damages allowable under the TVPRA;

h) Reasonable and recoverable attorney's fees;

i) Punitive damages with respect to each cause of action;

j) Costs of this action; and

k) Pre-judgement and all other interest recoverable

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Respectfully Submitted,

DATE: February 12, 2026

*/s/ J. Alexander Marcinko*
J. Alexander Marcinko
(*pro hac vice*)
Nathaniel L. Foote, Esq.
(CPF# 2402231005)
TeamD@vca.law
Andreozzi + Foote
4503 North Front Street
Harrisburg, PA 17110
(t) (717) 525-9124 |(f) (717) 525-9143

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing via electronic mail upon all counsel of record via the Court's Electronic Filing System, and a copy was sent to all non-represented parties via First-Class Mail, postage prepaid.


Date: **02/12/2024**                                    */s/ Taras*